UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

BOUCHARD TRANSPORTATION CO., INC., *et al.*,

                              Plaintiffs,                        <u>ORDER</u>

MORAN TOWING CORP. *et al.*,                            05 CV 154 (CPS) (KAM)

                              Defendants
------------------------------------------------------------------------ x

MATSUMOTO, United States Magistrate Judge:

        By letter motion dated July 29, 2005 [Docket No. 7], plaintiffs Bouchard Transportation Co. and the B. No. 55 Corp. (collectively "plaintiffs" or "Bouchard") seek a protective order under Fed. R. Civ. P. 26(c) precluding the production of three pages of a four-page letter dated September 19, 2003 ("9/19/03 letter") from plaintiffs' counsel to Bouchard. Defendants Moran Towing Corp. and the Tug Joan Turecamo (collectively "defendants" or "Moran") opposed the motion by letter dated August 4, 2005 [Docket No. 9], asserting that the letter is not protected by the attorney-client privilege nor the work product doctrine, and that any privileges were waived when Bouchard disclosed the letter to a third party. Plaintiffs, in their reply dated August 10, 2005 [Docket No. 10], reiterate that the disclosure to the third party was inadvertent, and that the letter is subject to a privilege that has not been waived.

        For the following reasons, the Court finds that plaintiffs have waived any privilege that attached to the 9/19/03 letter by inadvertently disclosing it to a third party. Accordingly, plaintiffs' Rule 26(c) motion for a protective order is denied.

## Background

In May 2002, plaintiff barge "Barge B. No. 55" was damaged by allegedly negligent towing by the defendant tugboat "Joan Turecamo." (Compl. ¶¶ 9-11). The Barge B. No. 55 was repaired by third party Caddell's Shipyard in Staten Island. (Docket No. 7 at 2).

On May 28, 2002, defendant Moran's surveyor attended a joint inspection of the damage to the barge and took photographs of the barge. (Docket No. 9 at 2). On June 3, 2002, Moran's surveyor returned to the inspection site and took additional photographs of the damaged steel pieces being cut out of the barge. (Id.) On or before June 4, 2002, Moran's representatives asked that the removed steel pieces be preserved. (Id.) Moran now asserts that none of these damaged steel pieces were preserved. (See Letter from Steven Kalil to Stanley Chelluck dated Nov. 12, 2003, annexed to Docket No. 9).

Freehill Hogan & Mahar LLP, plaintiffs' counsel, prepared a letter dated September 19, 2003 to Bouchard's claims manager, Victor Corso, an attorney. The 9/19/03 letter—which was submitted to the Court for an in camera review—listed documents sought by Moran's surveyors in order to evaluate Bouchard's claim for damages, and provided legal advice related to the production of documents and other evidence. On an unspecified date, Bouchard's claims manager, Victor Corso, forwarded a photocopy of the 9/19/03 letter to Steve Kalil ("Kalil"), president of Caddell's Shipyards, a third party to this lawsuit. (Docket No. 7 at 2). Because Caddell's Shipyards performed maintenance and repairs on the subject barge in the past, Caddell also had records that were responsive to Moran's request for documents. (Id.) Kalil testified at his deposition that he received the letter on October 28, 2003. (See Kalil Deposition at 37, annexed to Docket No. 9).

According to plaintiffs' counsel, Victor Corso only forwarded the letter to Kalil to obtain some of the records sought by Moran, "and that any production of the other portions of that letter that dealt with legal strategy and advice was inadvertent." (Docket No. 7 at 2). Plaintiffs' counsel adds that Mr. Corso "did not realize that page 3 of the letter contained legal advice with respect to one of the Requests to Produce." (Id.)

On January 11, 2005, plaintiff filed the instant suit. (See Docket No. 1).

Defendants noticed Mr. Kalil for a deposition which took place on July 20, 2005. (Docket No. 7 at 2). On an unspecified date, plaintiffs' counsel realized that Mr. Kalil had a copy of the 9/19/03 letter. (Id.) Plaintiffs' counsel advised Mr. Kalil to bring the 9/19/03 letter to the deposition but not to turn the document over at the deposition as part of his file until plaintiffs' counsel could discuss the issue with defendants' counsel. (Docket No. 7 at 2). When plaintiffs' counsel arrived at Mr. Kalil's deposition, they learned that Mr. Kalil had, earlier that morning, given a copy of the 9/19/03 letter to defendants' counsel. (Id.) Defense counsel acceded to plaintiffs' request to return the letter so that plaintiffs could seek a protective order. (Id.)

**Discussion**

**A.     Applicability of Attorney-Client and Work Product Privilege**

Defendants argue that the 9/19/03 letter is not subject to the attorney-client privilege because the letter "is from attorneys to their client, rather than the normal communication of a client to attorney." (Docket No. 9, at 3). Defendants also assert that the "advice and strategy" contained on page three does not clearly reflect "confidential information

conveyed by [Bouchard] to [its attorneys], which is the usual requisite for privilege of an attorney to client communication." (Id.)  This argument has no merit.  Under the law of this Circuit:

> It is now also well established that the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client.

Fry v. McCall, 95 Civ. 1915, 1998 U.S. Dist. LEXIS 7833, at *4-5 (S.D.N.Y. May 28, 1998).

The letter contains plaintiffs' counsel's evaluation of defendants' document requests and legal advice to Bouchard.  Therefore, the Court agrees with plaintiffs' assertion that the attorney-client privilege applies, because the 9/19/03 letter is a communication from Bouchard's attorneys to Bouchard concerning legal advice related to Bouchard's claims in this matter.

The parties also dispute that the 9/19/03 letter is protected by the work product privilege.  (Docket No. 7 at 3; Docket No. 9 at 6).  Under the circumstances, the Court finds that the 9/19/03 letter satisfies the Fed. R. Civ. P. 26(b)(3) definition of attorney work product because it is: (1) a document or tangible thing; (2) which was prepared in anticipation of litigation; and (3) was prepared by or for a party, or by or for its representative.  Accordingly, the letter is also attorney work product that cannot be disclosed in the absence of a waiver or showing of substantial need.

**B.      Whether the Attorney-Client Privilege was Waived by Inadvertent Disclosure**

Defendants next argue that, assuming the 9/19/03 letter is privileged, Bouchard waived the privilege when it forwarded the letter to Mr. Kalil, a non-party.  (Docket No. 9 at 3).

Plaintiffs respond that the disclosure was not made "under circumstances of such extreme or gross negligence as to warrant deeming the act of disclosure to be intentional." (Docket No. 7 at 3).

Voluntary disclosures of purportedly privileged documents generally waive the claim of privilege, but if the disclosure was inadvertent, "the privilege will not be waived unless the producing party's conduct was so 'careless as to suggest that it was not concerned with the protection of the asserted privilege.'" Prescient Partners v. Fieldcrest Cannon, Inc., 96 Civ. 7590, 1997 U.S. Dist. LEXIS 18818, at *12-13 (S.D.N.Y. Nov. 26, 1997) (quoting Aramony v. United Way of America, 969 F. Supp. 226, 235 (S.D.N.Y. 1997)). "Inadvertent disclosures are, by definition, unintentional acts, but disclosures may occur under circumstances of such extreme or gross negligence as to warrant deeming the act of disclosure to be intentional." Fry, 1998 U.S. Dist. LEXIS 7833, at *8.

In determining whether an inadvertent disclosure was the result of extreme or gross negligence, the test in this Circuit ("the Lois test") considers: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of discovery and the extent of the disclosure before their return is sought; and (4) 'overreaching' issues of fairness." Local 851 v. Kuehne & Nagel Air Freight, Inc., 36 F. Supp. 2d 127, 131 (E.D.N.Y. 1999) (citing Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985)). While Second Circuit courts have acknowledged that the Lois test applies best to situations where privileged documents were inadvertently produced during discovery, Lois has been considered "instructive" and a "useful framework" for evaluating whether the privilege was waived in other situations. See Local 851, 36 F. Supp. 2d

at 131 ("Although the [privileged letter] was served on plaintiff for filing with the court . . . and not produced during the discovery, the case law that has developed concerning inadvertent disclosure of privileged communications during discovery, though not precisely on point, is instructive."); United States v. Gangi, 1 F. Supp. 2d 256 (S.D.N.Y. 1998) ("The four Lois factors are not perfectly applicable to this case because of the different discovery rules governing criminal cases and because we are concerned here with inadvertent filing, not production. Nonetheless the Lois test is still a useful framework to apply . . . .") Accordingly, the waiver issue in this case will be analyzed under the Lois factors.[1]

### 1. *The Reasonableness of Precautions Taken by Plaintiffs' Counsel*

"Generally, precautions will be reasonable if the procedure followed in maintaining the confidentiality of the document [is] not . . . 'so lax, careless, inadequate or indifferent to consequences as to constitute a waiver.'" Prescient Partners, 1997 U.S. Dist. LEXIS 18818, at *14 (quoting Martin v. Valley Nat'l Bank of Arizona, No. 89 Civ. 8361, 1992 WL 196798, at *2 (S.D.N.Y. Aug. 6, 1992)). In this case, plaintiffs' counsel failed to take reasonable precautions to avoid disclosure of the 9/19/03 letter.

---

[1] One court has held that the Lois test can be used to analyze waivers of either the attorney-client or work-product privilege. Local 851, 36 F. Supp. 2d at 131 n.3 ("At any rate, when disclosure is made to an adversary, as was the case here, the analysis is the same for both the attorney-client privilege and work product immunity."). With respect to waivers of the work-product privilege, other courts have stated that "work product protection is only waived 'where disclosure to a third party substantially increases the likelihood that the work product will fall into the hands of the adversary." Verschoth v. Time Warner Inc., 00 Civ. 1339, 2001 U.S. Dist. LEXIS 3174, at *10 (S.D.N.Y. Mar. 22, 2001) (citing cases). Regardless of which privilege or analysis applies, for the reasons set forth in this decision, plaintiffs' motion is denied on the grounds that the Lois factors have been met, and the plaintiffs' disclosure substantially increased the likelihood that the 9/19/03 letter would fall into their adversary's hands.

First, plaintiffs' counsel (or even Mr. Corso, an attorney himself) did not label the 9/19/03 letter as confidential, privileged, or work product.  See Local 851, 36 F. Supp. 2d at 132 (finding that precautions were unreasonable where defendants' counsel failed to label a privileged letter as confidential); Gangi, 1 F. Supp. 2d at 265 (finding that precautions were unreasonable where the government did not label a privileged memorandum "confidential," "privileged," or "work product."); Bank Brussels Lambert v. Chase Manhattan Bank, No. 93 CIV. 5298, 1996 WL 944011, at *5 (S.D.N.Y. Dec. 19, 1996) (finding that the precautions were unreasonable where "counsel failed to insure that the documents were adequately labeled so as to put opposing counsel on notice of their confidential nature in the event of inadvertent disclosure.")

Second, plaintiffs' counsel has not articulated any efforts made or the existence of any established procedures to ensure that privileged and non-privileged communications are kept separately.  See Local 851, 36 F. Supp. 2d at 132 (finding that precautions were unreasonable where counsel had no procedure to keep privileged documents apart from non-confidential communications, or had simply failed to do so in that particular instance).

Third, plaintiffs argue that Bouchard's claims manager, Victor Corso, "did not realize that page 3 of the 9/19/03 letter contained legal advice with respect to one of the Requests to Produce" before he forwarded the letter to Mr. Kalil.  (Docket No. 7 at 2).  This argument might lean in plaintiffs' favor if an unsophisticated, untrained employee had unwittingly forwarded the letter to Mr. Kalil, but since Mr. Corso, as defendants note, is a licensed attorney, see New York State Attorney Directory listing for Victor Paul Corso, annexed to Docket No. 9, one can reasonably presume that he is fully capable of distinguishing privileged from non-

privileged material, and is aware of the risks incurred by the transmission of privileged material to third parties.

In sum, the first factor weighs in favor of finding a waiver.

### 2. *Time Taken to Rectify the Error*

With respect to the second Lois factor, the question is whether "the party that inadvertently discloses the privileged document seeks relief promptly upon learning that privileged information has been disclosed." Gangi, 1 F. Supp. 2d at 266. See also Local 851, 36 F. Supp. 2d at 132 ("Inordinate delay in claiming the privilege can prejudice the adversary and may be deemed [a] waiver."). "The length of delay in claiming the privilege should be measured from the time the producing party learns of the disclosure, not from the time of the disclosure itself." In re Natural Gas Commodity Litig., 229 F.R.D. 82, 88 (S.D.N.Y. 2005) (quoting In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 222 (S.D.N.Y. 2001)).

Courts have consistently found that an immediate request for the document's return satisfies the second Lois factor. See In re Natural Gas Commodity Litig., 229 F.R.D. at 88 (finding that there no inordinate delay where plaintiff's counsel, upon receiving notice of the inadvertent disclosure, contacted defendants' counsel by telephone and email on the same day, asserted privilege over the pages disclosed and requested their return); Local 851, 36 F. Supp. 2d at 133 (finding that second factor was satisfied where defendants' counsel requested the document's return upon learning of the inadvertent disclosure). See also Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., No. 96 Civ. 2064, 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) (finding that second factor supported a finding of waiver where plaintiffs' counsel waited one month before asking defendant to return privileged material).

In this case, plaintiffs only state that they "subsequently learned" on an unspecified date that Mr. Kalil had the 9/19/03 letter, but did not immediately request its return. Instead, plaintiffs only advised Mr. Kalil to bring the 9/19/03 letter to his July 20, 2005 deposition and to not turn the document over at his deposition. (See Docket No. 7 at 2). In light of plaintiffs' assertion that the 9/19/03 letter is an "undisputed" privileged communication between Bouchard and its attorneys, it is difficult to accept their unexplained decision to risk further disclosure by waiting until the morning of Mr. Kalil's deposition to seek its return. Accordingly, the second factor also weighs in favor of finding a waiver.

### 3. *Scope of Discovery and the Extent of Disclosure*

In cases where a small number of privileged documents were inadvertently disclosed as part of a large production of discovery materials and the disclosure was careless and not egregious, courts have generally upheld claims of privilege. Liz Claiborne, 1996 WL 668862, at *5. This factor takes into account "the number of privileged documents disclosed in relation to the overall size of the document production." Prescient Partners, 1997 U.S. Dist. LEXIS 18818, at *18. See, e.g., In re Natural Gas Commodity Litig., 229 F.R.D. at 89 (finding that third Lois factor weighed against a finding of waiver, where defendant inadvertently disclosed 3 privileged pages out of 65,000 pages produced). Here, an isolated letter was forwarded to a third party's attention and thus weighs heavily in finding a waiver. See Local 851, 36 F. Supp. 2d at 133 (finding a waiver where the "purportedly privileged letter was merely one of seven exhibits to a motion served on [the opposing party] for filing with the court," and was not part of a massive document production); Gangi, 1 F. Supp. 2d at 266 (finding a waiver where only one document was disclosed and the party disclosing it did not "have the excuse that

it was producing thousands of pages of documents.")

Furthermore, when the inadvertent disclosure results in "complete disclosure" of its contents to the opposing party before the privilege is asserted, "courts are more likely to find that confidentiality of the document is lost and the privilege waived." Liz Claiborne, Inc., 1996 WL 668862, at *5. See also Int'l Digital Sys. Corp. v. Digital Equip. Corp., 120 F.R.D. 445, 449 (D. Mass. 1988) ("There is no order I can enter which erases from . . . counsel's knowledge what has been disclosed.") "Complete disclosure occurs when privileged documents are turned over to opposing counsel and the contents of the documents can be ascertained immediately upon inspection." Liz Claiborne, Inc., 1996 WL 668862, at *5.

In this case, there is no question that all three pages of the four-page 9/19/03 letter were reviewed by the defendants, since the three pages of the 9/19/03 letter were presented and marked as Exhibit 7 during Mr. Kalil's deposition. (See Docket No. 9 at 1; see also Kalil Deposition at 34-37, annexed to Docket No. 9). Because the three pages of the 9/19/03 letter were disclosed to defendants in their entirety, this third factor weighs in favor of finding a waiver as to those pages.

### 4. *Overreaching Issues of Fairness*

The last factor considers "whether the act of restoring immunity to an inadvertently disclosed document would be unfair." Local 851, 36 F. Supp. 2d at 134 (quoting Prescient, 1997 U.S. Dist. LEXIS 18818, at *20)). "Case law supports a finding of waiver where a 'party makes assertions or takes positions in litigation that in effect put his privileged communication in issue.'" Id. (quoting Koster v. Chase Manhattan Bank, No. 81 Civ. 5018, 1984 WL 883, at *4 (S.D.N.Y. Sept. 18, 1984)). Waiver can be justified in certain circumstances

where the parties advance claims or defenses that make the protected information relevant to the case. Id.

Defendants contend that the 9/19/03 letter is necessary to support their claim for spoliation of evidence, since the missing steel sections of the barge are relevant to both plaintiffs' claims for damages arising from defendants' negligent towing, and to the defendants' position that the barge may have suffered pre-existing damages. As defendants contend, the 9/19/03 letter contains information that is relevant to defendants' anticipated spoliation claim. Thus, consideration of fairness weighs in favor of waiver, because defendants' spoliation claim may be prejudiced if the privilege were restored.

**Conclusion**

For the reasons stated above, plaintiffs' Fed. R. Civ. P. 26(c) motion to preclude production of the first three pages of the 9/19/03 letter is denied. Any objections to this order should be filed with Judge Sifton. Failure to object within ten (10) days of the date of entry of this order will preclude appellate review by the District Court. Local Civil Rule 6.3; Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); see also Fed. R. Civ. P. 72(a). Any requests for extensions of time to file objections should be made to Judge Sifton.

Dated: September 8, 2005
      Brooklyn, New York

SO ORDERED.

/s/
Kiyo A. Matsumoto
United States Magistrate Judge